The district court abused its discretion in denying plaintiff's writ of mandate petition. With respect to... Help me on a little preliminary issue. I may just be confused about the procedure, but I was thinking, the judgment here doesn't dispose of all the claims in the case. It's only on the administrative mandamus. So I wonder if there's a final judgment or 54B certification so that we have appellate jurisdiction. I believe there is a final judgment, Your Honor. There is? Yes. On all claims? Yes. Did you dismiss your other claim? Yes. So this was the only thing left in the case? Yes, Your Honor. And did the judgment so indicate? Yes, Your Honor. Okay. The issue with respect to the propriety of dismissing plaintiff's state discrimination claim as premature, Your Honor, we believe it is legally incorrect in the sense, you know, that if we take that there are two administrative procedures at the level of the regents and at the level of the state, you know, which address two different issues, the administrative hearing at the regents only addressed the issue of termination. There was no adjudication of discrimination claim in that proceeding. At the same time, you know, Your Honors, plaintiff was pursuing his termination claim in the regents' administrative hearing proceedings. Plaintiff did file his administrative hearing with the state, you know, for discrimination. The two proceedings were going parallel at the same time. And you said in your brief that the EEOC made a finding of discrimination. Is that correct? Yes, Your Honor. Right-to-sue letter. Right-to-sue letter. Right-to-sue letter is not a finding of discrimination. It's a right-to-sue letter with a determination that there is probable cause of discrimination in that case, Your Honor. So didn't you say in your brief that there was a finding of discrimination,  I meant to say probable cause with respect to determination of discrimination, Your Honor. It's that the finding, in a way, in a sense, you know, because they made it. Well, we see a lot of cases where there's a right-to-sue letter. It doesn't prove anything. It just says go ahead with your case. But they did make in this case, you know, that there is a basis for discrimination and there was a determination. That discrimination case is gone, isn't it? That was the case. What's left is the State law question. That's correct, Your Honor. So the point we're making, Your Honor, is if the regent's administrative hearing did not address any issue as it relates to discrimination. Well, it could have, Your Honor. How could it have, Your Honor? Well, I assume that Mr. Mulligett could have introduced that claim in the arbitration, couldn't he? Yes, Your Honor. If you look at the September 22nd 202 determination and finding by the district court, you know, the district court made a finding that there was no discrimination adjudicated in the regent's arbitration hearing. Well, my question is couldn't he have introduced that claim into that proceeding had he wanted to, Mr. Mulligett? Because there was a parallel proceeding with the State and EEOC discrimination State administrative hearing, an alternative hearing that both the regents and Mulligett were participating at that time. But he elected to go on two different tracks, then, is that? It's not two different tracks because he never presented an issue of discrimination. He never presented an issue of discrimination in the regent's arbitration hearing. My question is couldn't he have? Was there anything that prevented him from doing, from introducing that? Sure, he could have. I think, you know, because the regent's administrative hearing does not allow an elaborate discovery proceedings, you know, with respect to witnesses, with respect to documents. You know, it's really a very truncated administrative hearing which only addresses, you know, the value, whether the termination, the sanction of termination is appropriate or not, you know. So he would be losing quite an enormous right, you know, by simply submitting his discrimination claim to the regent's administrative proceedings. It doesn't really have an elaborate discovery proceedings at that level, you know. So because the two were really parallel proceedings, you know, we believe, you know, that the district court made an error in dismissing plaintiff's discrimination claim as premature, you know. I'm confused about something here, and I'm sure you'll be able to help me out. Sure. It looks to me as though the colorable claim for discrimination was other employees who were not black and not Ethiopian also stole money from the university, and they didn't get fired. So the university was discriminating by race and nationality in firing Mulligata. But it looks to me as though the claim that's before us is not that one, but rather the claim that the administrative proceeding did not comply with the administrative regulations for how a proceeding should be conducted and what personnel should participate. I think I would say, Your Honor, the two issues are before this Court, you know. The first claim, you know, that his termination sanction was discriminatory in the sense, you know, that other white employees who did misconduct, you know, were simply given a 10-day suspension as opposed to termination. So that is his claim of discrimination in application of disciplinary sanction. The other is, you know, Your Honor, is whether in the administrative hearing, whether the university followed the proper procedure in imposing a termination sanction or whether the sanction of termination as such is excessive, you know, has nothing to do with discrimination. So when we talk about the administrative hearing of the university, the decision of the arbitrators, we discuss the issue whether the action of the arbitration was procedurally correct, whether they did follow the law as provided under the university regulation. Those are issues which are also before you here. Isn't that all we've got? Aren't those all the issues before us on a something, mandamus, whatever this California procedure for reviewing an administrative procedure is? I mean, all we're reviewing now is whether the arbitration was conducted right, not whether the university's decision to fire Mulligata was discrimination by race and nationality. Your Honor, what happened in this case is plaintiff filed a petition for administrative mandamus to reverse the administrative hearing of the university. That's one aspect of the case. The second aspect is plaintiff also filed a claim for discrimination under Fair Employment Act of the state, independent claim. That was removed to the federal district court. And then I think, you know, when the district court made a decision, the district court simply dismissed plaintiff's discrimination claim, you know. And on the second round, the district court also denied the petition for writ of mandate. So there are two issues. One is the discrimination claim, which is expressly played as a cause of action in plaintiff's complaint, which was before the district court, and also the writ of administrative mandamus, the procedure to overturn the administrative hearings. So our position, Your Honor, is the district court abused its discretion in dismissing our discrimination claim. And secondly, with respect to the writ of administrative mandamus, our position is, Your Honor, because the university did not follow its own regulation, its own internal regulation, which is equivalent to a state statute, you know, because it violated its own regulation, we believe, you know, that its decision is void. Because its decision is void, the whole issue should be reviewed under a de novo standard as opposed to simply a differential standard, Your Honor. And I reserve, Your Honor, the remaining 19 seconds for rebuttal, if I can. Thank you. Thank you, counsel. May it please the Court. My name is Larry Woolertz, and I represent the regents of the University of California. Your Honors, perhaps I can clear up a little bit procedurally what happened here. The regents filed a summary judgment motion against Mulugeta's state law claims alleging that he had failed to successfully exhaust his administrative and judicial remedies. He filed a writ petition but did not have the Court review the writ petition at the time we filed our summary judgment motion. Because he had not exhausted his judicial remedy of overturning an adverse administrative decision, the state law claims were dismissed, and that included the FIHA claim. What Mr. Mulugeta is now claiming is that the FIHA claim should not have been dismissed, that he was in a parallel proceeding. However, the adverse decision affected basically what his – the reason for his termination. They found that he misused university resources, and they found that the termination was a valid sanction for that misuse. So what Mr. Mulugeta is left with is a – Wait. You've got to focus this a little better for me. I'm not used to California administrative procedure. Okay. He has different claims. One is they followed the wrong procedure in the administrative proceeding. Okay. Another is the way – based on the CEOC determination, I have determined that there is reasonable cause to believe that the charging party was discriminated against and discharged because of race and national origin, that basically non-Caucasian, non-Ethiopian employees were also audited and found to have misused university resources there in either discipline or discharge. That was from the EEOC letter. Now, as I understand it, what you're saying is he couldn't pursue his FIHA claim because he hadn't completed his administrative mandamus action. But the two actions were consolidated and he was, in fact, pursuing his administrative mandamus action in the very same district court action as his FIHA claim. So I sort of don't get it procedurally. How can you say you haven't exhausted when, in the very same court, you're exhausting to the extent the court will let you? Exactly. The issue is you can't do it concurrently. Before you file your civil claims in California, you need to have exhausted your administrative and then your judicial remedies. If you file an administrative – You mean you can't file a FIHA claim until you have a final judgment in your administrative mandamus? With the University of California? No, that's not exactly what we're saying. However, if you elect to go through the administrative procedures that the University of California provides, there's case law, Castillo, that holds that if you get an adverse determination on the issue that you seek to have adjudicated by your FIHA claim, you need to have that adverse determination overturned because the courts give credit to the administrative decision. What Mr. Mugeta did is he filed his administrative writ of mandamus as a cause of action in his State law complaint concurrently with his FIHA complaint. Well, make – have I got it right that he's filed – he started out in the superior court to test the administrative procedure, that he'd lost his grievance in the administrative procedure. And then he went over to the superior court and filed a claim for mandamus to test that administrative. Was that right? No. He filed them concurrently. He filed a FIHA claim. I know he piggybacked another case on top of it, and that's probably what caused all the confusion, but he started in the superior court and then you removed it. We removed it to Federal court. The regents removed it to Federal court because there was a Federal law issue in the discrimination claim. He asserted also a claim for Title VII. And then the first order of the district court was to deny summary judgment to the plaintiff and set the case for trial on the other claim. And grant summary judgment for the regents. And granted the regents summary judgment on the administrative claim. Correct. We had moved for summary judgment as to all causes of action. And then he had jettisoned his Federal claim. His Title VII claim. And now he's back here appealing now, saying, well, the district court was wrong in not agreeing with me on my administrative claim. Correct. What the district court did is it. That's why the district court was right in handling the administrative claim the way it did. Okay. What happened to the FEHA claim? I'm still unclear on that. Okay. You have he had concurrent filings. He had a cause of action for writ of administrative mandamus. He had a cause of action for FEHA. California law provides that you cannot proceed on any State law claims, including FEHA, until you have overturned an adverse determination of the subject matter that you seek to have adjudicated in court. So what had happened is he went through the administrative process at the University of California, which determined that his determination was not because of unlawful reasons. It was because he had endorsed a check made out to a third party, deposited it into his own account, and kept that money for a year until the regents found out that he had done that. The race discrimination claim argument was not put forth in the arbitration. Is that right? The arbitrator didn't consider race discrimination at all. No, but what he did consider, the initial statement by Mr. Mulugeta's attorney at that time was we were putting on evidence of discrimination. Even if he didn't, the arbitrator determined that the cause for Mr. Mulugeta's So by coming up with that determination, courts have held that he can't proceed on a FEHA claim alleging that he was terminated because of race, national origin. That's why he would have to overturn the adverse administrative proceeding. I wonder if that's right, that he has to overturn the adverse administrative proceeding. What I'm thinking is this. The administrative proceeding is to determine whether it is just, whether he did in the university, and it's just to fire him for it. And the answer to both questions is yes. He stole the money, and it's perfectly reasonable to fire an employee who steals from the employer. However, the FEHA claim really isn't about that. He's not saying I didn't steal the money or that it's not fair to fire people who steal. What he's saying is selective enforcement. They don't fire non-Ethiopian, non-Ethiopians who steal. So it's perfectly logical to lose the administrative proceeding to have a final adjudication that it was fair discipline, he stole the money, and he properly got fired for it. It's perfectly logical to have that adjudication, but also to have an adjudication that it was discriminatory to fire him because they don't fire non-Ethiopians who do the same thing. A discriminatory application of discipline. A discriminatory application of perfectly fair discipline. I understand. That was addressed in the hearing, though. And in the first 28 of the administrative proceeding, I'm sorry, the arbitrator's decision discusses that. It did address the discrimination. Not discrimination. There were no – there wasn't testimony put on about him being Ethiopian and along those lines, but he went into a discussion of the discipline that was meted out to Mulugeta that it was fair in this and that there was no evidence that it was being done differently with white or non-Ethiopian individuals. So that's why courts have held in what's cited in my brief, the Castillo case, discusses why FIHA claims are precluded when this is what is happening. If I can briefly talk about the writ petition also, if there's no further questions on the FIHA. Help us understand what this looks to me like. The courts asked for eggs over easy and they got an omelet. With respect to the – to what was going on there, there's three issues in the writ. The first two are interrelated. Mr. Mulugeta's alleging there was not substantial evidence in the record to support a finding of misuse and to support a finding that his termination was warranted under that. I put the evidence in my papers and I won't go through it with you here and he didn't make comments about it and there was nothing in the reply. So what I would like to talk a little bit about is the fact, the allegations, the regents violated their internal procedures in this administrative hearing. And I think the most important aspect of this is what he points to is not the administrative hearing. He's looking at the investigation that occurred well before the hearing. And 104.5, CCP 104.5 allows courts to review the processes that are occurring during the administrative hearing for actions that are in excess of their jurisdiction or an abuse of jurisdiction, I'm sorry, abuse of discretion. And that's not what happened here. This was an investigation into Mr. Mulugeta's misuses. And even taking, if the Court wants to look at this argument, there's no evidence in the record that the regents deviated from those procedures. There is competent evidence in the record that shows that they did abide by those procedures and it's simply the argument of counsel that the investigation of Mulugeta was done improperly. I see my time is up. If you have questions, go on. Thank you. Thank you for your time. Mulugeta v. Regents is submitted. Next, we'll hear Trickler v. County of Lake. A much litigated case. A case that's becoming kind of a career for the County Attorney's Office.  Thank you. Thank you.
judges: Cudahy, Kleinfeld, Jones